UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GUARANTEED RATE, INC., <br><br> Plaintiff, <br><br> v. <br><br> GREG THOMAS, <br><br> Defendant. | No. 20 CV 3288 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

While employed by Guaranteed Rate Inc., Greg Thomas accepted a position with GRI's competitor, CrossCountry Mortgage, recruited employees to join CCM, and allegedly took confidential information, before resigning from GRI. Thomas now works at CCM with another colleague he recruited from GRI. GRI claims that Thomas breached his contract and fiduciary duties. For the reasons stated below, Thomas's motion to dismiss is denied.

**I.　Legal Standard**

A complaint must contain a short and plain statement that plausibly suggests the violation of a legal right. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–58 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009). At the motion to dismiss stage, I accept the plaintiff's factual allegations as true and draw all reasonable inferences in its favor. *Iqbal* at 678–79. I do not accept allegations that are unsupported, conclusory, or legal conclusions. *Id.* I may consider documents

attached to the complaint and documents that are referenced in and central to its claims. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018).

**II. Facts**

Guaranteed Rate Inc., a residential mortgage company, hired Greg Thomas as a branch manager. [1] ¶¶ 7–9.[1] Thomas's duties included soliciting customers, recruiting salespeople, and strengthening business operations. [1] ¶ 12. To achieve these goals, GRI trusted Thomas with confidential information, including the identities of top-performing employees, hiring criteria, training techniques, pricing and cost structure, information about potential clients, and detailed client records. [1] ¶¶ 13–14. GRI also made substantial investments in Thomas's branch and expended significant money, time, and resources to hire employees to grow its business and strengthen its reputation. [1] ¶¶ 8, 10.

Thomas's employment agreement contained a clause prohibiting the misuse of confidential information and a non-solicitation clause that prevented Thomas from 1) soliciting employees to join him in a different business venture and 2) supervising, managing, or overseeing the work of any former GRI employee, during Thomas's employment and for two years after leaving the company, unless the company approved such a request. [1] ¶¶ 15, 17; [1-1] at 14–15. Under the non-solicitation clause, Thomas had to pay $50,000 in liquidated damages for each instance of non-compliance. [1-1] at 15. This payment would not relieve him of any other obligation

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are from the CM/ECF header placed at the top of documents.

or amount owed under the contract. [1-1] at 15. The contract also contained a modification clause, allowing a court to modify any provision deemed unenforceable, and a separate clause that stated all of the terms were "reasonable in all respects" and "necessary to protect legitimate business and competitive interests." [1] ¶ 18; [1-1] at 16–17.

While employed at GRI, Thomas accepted a salesperson position with a competitor, CrossCountry Mortgage. [1] ¶ 19. Before leaving, Thomas attempted to poach GRI employees, in part to improve his standing with CCM. [1] ¶ 21. Thomas asked at least two other GRI employees to join him, and facilitated a discussion between one of them and CCM's CEO. [1] ¶¶ 20, 22–27. As a part of his pitch, Thomas falsely suggested that many employees were leaving GRI to go work for CCM. [1] ¶¶ 23, 28.[2] About a month later, Thomas took a screenshot of his year-to-date numbers and those of a few other GRI employees and sent it to his personal email address. [1] ¶ 30. A few weeks later, Thomas resigned from GRI. [1] ¶ 31. In his resignation letter, Thomas asked to take his client list, other information deemed eligible for release, and another GRI employee to CCM, which GRI denied. [1] ¶ 32. The next day, that same employee left GRI to go work on the same team as Thomas at CCM, at an office located in the same geographic area as the GRI branch. [1] ¶¶ 33–34. GRI filed this lawsuit against Thomas, alleging breach of contract and breach of

---

[2] The two employees Thomas solicited did not join CCM. [1] ¶ 29.

fiduciary duty for joining a competitor, soliciting GRI employees, and taking confidential information. [1].[3]

## III. Analysis

The enforceability of a restrictive covenant, like a non-solicitation clause, is a question of law. *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871, ¶ 12.[4] Because restrictive covenants are restraints on trade, the terms of the covenant must be reasonable to be enforceable. *Id.* ¶ 16.[5] A covenant is reasonable if it 1) is no

---

[3] GRI is pursuing similar claims against three other GRI employees. *See* Memorandum Opinion and Order, ECF No. 33, *Guaranteed Rate Inc. v. Wilson*, No. 20-CV-1663, 2020 WL 4736395 (N.D. Ill. August 14, 2020) (denying defendant's motion to dismiss); [22-1] and [22-2] (state court orders denying defendant's motion to dismiss in *Guaranteed Rate Inc. v. Harry Richter*, No. 2020 L 371 (Ill. Cir. Ct. June 30, 2020)).

[4] The court has subject-matter jurisdiction under 28 U.S.C. § 1332 because GRI is a citizen of Delaware and Illinois, Thomas is a citizen of Indiana, and the amount in controversy exceeds $75,000 because GRI alleges at least three instances of non-solicitation (costing $50,000 each) and litigation costs and fees. [1] ¶¶ 3–5. A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits to determine what substantive law applies. *Gunn v. Continental Casualty Company*, 968 F.3d 802, 808 (7th Cir. 2020). Illinois courts apply Illinois law unless a difference in law affects the outcome of the case or the parties agree that forum law does not apply. *Id.* (citing *Bridgeview Health Care Center, Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 14 and *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill.2d 325, 351 (2002)). For contract disputes, Illinois courts honor contracting parties' choice-of-law provision unless an exception applies. *See Belleville Toyota, Inc.*, 199 Ill.2d at 351. Here, the employment agreement contained an Illinois choice-of-law provision and an exception does not apply. [1-1] at 17. Illinois law governs the parties' breach of contract dispute. The parties also agree Illinois law applies. [22] at 4, n.1.

[5] Before considering whether a restrictive covenant is reasonable, the court must determine whether the covenant is ancillary to a valid contract and supported by adequate consideration. *McInnis v. OAG Motorcycle Ventures, Inc.*, 2015 IL App (1st) 142644, ¶ 26; *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill.2d 52, 68 (2006). To be ancillary, "[t]he covenant must be subordinate to the contract's main purpose." *Abel v. Fox*, 274 Ill.App.3d 811, 814 (4th Dist. 1995). The main purpose of GRI's contract with Thomas was to establish Thomas's compensation package and benefits, and the non-solicitation provision was subordinate to that purpose. *See* [1-1]. Thomas also worked at GRI for over two years, [1] ¶¶ 9, 31, which constitutes adequate consideration. *See McInnis*, 2015 IL App (1st) 142644, ¶ 27; *see also Bankers Life and Casualty Company v. Miller*, 2015 WL 515965, at *3–4 (N.D.Ill. 2015).

greater than required to protect an employer's legitimate business interest; 2) does not impose undue hardship on the employee; and 3) is not injurious to the public. *Id.* at ¶ 17. The court must evaluate the totality of the circumstances to determine reasonableness. *Id.* at ¶¶ 16, 42. For example, whether a legitimate business interest exists depends on various factors, including the near-permanence of customer relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions. *Id.* ¶ 43.[6] The specific facts and circumstances of a particular case matter because "the same identical contract and restraint may be reasonable and valid under one set of circumstances, and unreasonable and invalid under another set of circumstances." *Id.* ¶ 42 (citation omitted). Because reasonableness is such a fact-intensive inquiry, only in extreme cases will a court find a restrictive covenant invalid on its face. *See Bankers Life and Casualty Company v. Miller*, 2015 WL 515965, at *5 (N.D.Ill. 2015) (motions to dismiss are not the appropriate vehicle to decide fact-intensive issues) (collecting cases).

Thomas's argument—that covenants that prohibit the solicitation of "any" employee when the employer is a large corporation are unenforceable as a matter of law—is wrong. Sometimes courts have enough information at the motion to dismiss stage to reach that conclusion, and sometimes they do not.[7] Here, there is insufficient

---

[6] Undue hardship is about whether the restrictions unreasonably limit the employee's ability to work elsewhere. *See Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill.2d 52, 76–77 (2006). A covenant is injurious to the public when it violates the public policy of the state. *Id.* at 69.

[7] *Compare Atkore International v. Fay*, 2018 WL 6248767, at *3 (N.D.Ill. 2018) (concluding at the motion to dismiss stage that a customer non-solicitation clause was unreasonable because it included prospective customers and customers with whom the employee never had

5

information to make a reasonableness determination. Thomas argues GRI is a large corporation without submitting any evidence, like an affidavit, about the actual size of GRI. The allegations in the complaint do not indicate the number of employees hired by GRI or the company's geographical scope.[8] There is also insufficient information about the length of the restriction. *See Lawrence and Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill.App.3d 131, 139 (2nd Dist. 1997) (the court could not determine whether a two-year restriction was reasonable because the record contained no evidence regarding how long it took the plaintiff to acquire a client or obtain a project). Here, GRI alleges it expended substantial time, money, and resources to develop its employees, [1] ¶ 8, so a two-year ban may be reasonable. I cannot draw inferences in Thomas's favor at this stage in the litigation. *See Iqbal* at 678–79. Finally, while Illinois courts may be reluctant to enforce customer non-solicitation clauses, *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill.App.3d 437, 455 (1st Dist. 2007), Thomas fails to present any evidence or argument that GRI's protectable interest in its customers is analogous to GRI's protectable interest in its employees. At this stage of the case, the restrictions placed on Thomas's

---

any contact), *with Pactiv Corp. v. Menasha Corp.*, 261 F.Supp.2d 1009, 1014–15 (N.D.Ill. 2003) (concluding at the summary judgment stage that the employee non-solicitation clause was unreasonable because of the size of the company, which included more than 100 subsidiaries and affiliates across the globe), *and Pampered Chef v. Alexanian*, 804 F.Supp.2d 765, 770 (N.D.Ill. 2011) (ruling at the preliminary injunction stage after an evidentiary hearing that the employee non-solicitation clause was unreasonable based on the size of the sales force, which was approximately 60,000 individuals).

[8] For example, based on the allegations in the complaint, it would be an inference in Thomas's favor, one that I cannot draw at this stage, to conclude that GRI hired janitors who fell within the scope of the employee non-solicitation clause.

activities may have been "narrowly tailored to protect only against activities that threaten" GRI's interests. *Id. at* 452 (citation and quotation omitted). Thomas cannot skip the necessary factual development to determine reasonableness. While Thomas's legal arguments may prevail, his motion to dismiss GRI's breach of contract claim is denied.[9]

GRI also states a claim for breach of fiduciary duty under Illinois law. Under Illinois law, fiduciary duties extend to employees. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 69. During employment, an employee may plan to compete with his employer but cannot commence competition or entice co-workers away. *Alpha School Bus Co., Inc. v. Wagner*, 391 Ill.App.3d 722, 736 (1st Dist. 2009) (citation

---

[9] Because I do not reach the question of enforceability, I need not reach the issue of modification. However, to the extent the parties brief the issue again at a later stage, they should address whether the requested modification is a major or minor change, since Illinois courts are circumspect in their modification. *See Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.,* 378 Ill.App.3d 437, 456–57 (1st Dist. 2007). The greater the deficiencies, the less likely a court will modify a restrictive covenant because "that would be tantamount to fashioning a new agreement" and "could have the potential effect of discouraging the narrow and precise draftsmanship which should be reflected in agreements." *Lee/O'Keefe Ins. Agency, Inc. v. Ferega*, 163 Ill.App.3d 997, 1007 (4th Dist. 1987). I also need not reach the issue of whether the liquidated damages provision is an unenforceable penalty, since I have yet to determine whether there was a breach. Nevertheless, if the parties brief this issue again, they should address whether a flat amount of $50,000 for each instance of non-compliance ignores the severity of each breach, based on the different activity the covenant restricts regardless of the outcome and the covenant's application to "any" employee. *See XCO Intern. Inc. v. Pacific Scientific Co.*, 369 F.3d 998, 1004 (7th Cir. 2004) ("if a contract provides that breaches of different gravity shall be sanctioned with equal severity, it is highly likely that the sanction specified for the mildest breach is a penalty") (collecting cases). The parties should also address whether the liquidated damages provision in Thomas's contract included actual damages. *Compare H & M Driver Leasing Services, Unlimited, Inc. v. Champion Intern. Corp.*, 181 Ill.App.3d 28, 30–31 (1st Dist. 1989) (the covenant stated that the company agreed to pay liquidated damages "plus" actual damages, which was an unenforceable penalty), *with* [1-1] at 15 (the non-solicitation clause in Thomas's agreement stated that "[y]our payment of such liquidated damages will not relieve you of any other obligation or amounts" owed under the agreement), *and* [1] at 7 (the complaint states GRI seeks "compensatory damages in an amount in accord with the proofs" for breach of contract).

omitted); *ABC Trans Nat. Transport, Inc. v. Aeronautics Forwarders, Inc.*, 90 Ill.App.3d 817, 824 (1st Dist. 1980). GRI alleges that while employed, Thomas actively attempted to recruit employees for CCM and successfully convinced one employee to leave. [1] ¶¶ 20–22, 27, 32–34. Thomas also took allegedly confidential information. [1] ¶ 30.[10] Drawing all reasonable inferences in GRI's favor, these actions suggest Thomas went beyond planning and started competing against GRI while employed. After termination, former employees may compete with their former employer absent fraud, a contractual restrictive covenant, or the improper taking of a customer list, provided there was no demonstrable business activity before their termination. *Alpha School Bus Co., Inc.*, 391 Ill.App.3d at 736. At this stage in the pleadings, GRI has sufficiently alleged a restrictive covenant, business activity before Thomas's resignation, and the improper taking of information. [1-1] at 14–15; [1] ¶¶ 20–22, 27, 30, 32–34. Thomas's motion to dismiss GRI's fiduciary duty claim is denied.[11]

---

[10] Thomas's argument that the production levels of loan officers amount to general knowledge and information, *see System Development Services, Inc. v. Haarmann*, 389 Ill.App.3d 561, 572 (5th Dist. 2009) (general knowledge and skills that employees acquire through experience is not confidential information), and that the screenshot only contained production level data, require inferences that cannot be drawn here. For now, it is reasonable to infer that because Thomas took a screenshot and went to work for a competitor, [1] ¶¶ 30–32, the information he took was confidential and misused.

[11] Under Illinois's choice-of-law rules, Illinois courts apply the internal affairs doctrine, a conflict-of-law principle that recognizes that only one state—the company's state of incorporation—should govern matters relating to the corporation's internal governance. *See CDX Liquidating Trust v. Venrock Associates*, 640 F.3d 209, 212 (7th Cir. 2011) (citing *Newell Co. v. Petersen*, 325 Ill.App.3d 661,686–89 (2nd Dist. 2001)). GRI is incorporated in Delaware. [1] ¶ 3. The parties did not appear to consider whether Delaware law should apply under Illinois's application of the internal affairs doctrine and whether the outcome under Delaware law might be different. Under Delaware law, only key managerial employees owe fiduciary duties. *See Triton Const. Co., Inc. v. Eastern Shore Elec. Services, Inc.*, 2009 WL 1387115, at

## IV. Conclusion

The amended motion to dismiss, [20], is denied. The original motion to dismiss, [17], is terminated as moot. Defendant shall answer the complaint by November 24, 2020, and the parties may proceed with discovery. The parties must submit a joint status report with a proposed schedule for discovery completion and an update on the progress of discovery by Novmber 30, 2020.

ENTER:

                                          Manish S. Shah
                                          United States District Judge

Date: November 3, 2020

---

*10 (Del.Ch. 2009). However, fiduciary relationships may arise through principles of agency. *Id.* at *11 (an agent has a duty to refrain from placing himself in a position antagonistic to his principal). Illinois law does not limit fiduciary duties to key managerial employees, but an employee's duty to a company may resemble a principal-agency relationship. *See Corroon & Black of Illinois, Inc. v. Magner*, 145 Ill.App.3d 151, 160 (1986). For purposes of deciding the motion to dismiss, I apply Illinois law on fiduciary duties, but at a later stage, the parties may need to brief whether Delaware law ought to apply.